USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  1/24/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

UNITED STATES OF AMERICA,

        -against-

JUAN LUIS ALMANZAR HERNANDEZ,

               Defendant.

-----------------------------------------------------------X

19-CR-360 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

    Defendant Juan Luis Almanzar Hernandez, proceeding *pro se*, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Def.'s Mot., ECF No. 107.) Almanzar Hernandez argues that he should be released because: (1) he is at heightened health risk from COVID-19, and (2) early release would "achieve [18 U.S.C.] § 3553(a)'s directive to impose a sentence that is 'sufficient, but not greater than necessary.'" (*Id.* at 1–2; *see also* Def.'s Reply at 8-12, ECF No. 115.) The Government opposes Almanzar Hernandez's motion. (Gov't Opp'n, ECF No. 109.) For the reasons below, Almanzar Hernandez's motion is DENIED.

**BACKGROUND**

    On December 2, 2019, Almanzar Hernandez pleaded guilty to conspiring to distribute and possess with the intent to distribute: (1) five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(b)(1)(A); (2) 400 grams and more of mixtures and substances containing a detectable amount of fentanyl, also in violation of § 841(b)(1)(A); and (3) 100 grams and more of mixtures and substances containing a detectable amount of heroin, in violation of § 841(b)(1)(B), and all in violation of § 846. (Plea Tr. 11:18-12:4, ECF No. 31; *see also* Presentence Investigation Rep. ("PSR") ¶¶ 2, 4, ECF No.

48.) Specifically, Almanzar Hernandez, along with a co-defendant and co-conspirator, operated a stash house to receive, store, and deliver narcotics and narcotics proceeds. (PSR ¶ 11.) Almanzar Hernandez regularly supplied a co-defendant with kilo or multi-kilo quantities of cocaine for distribution to others. (*Id.*) In particular, over the course of several weeks, beginning in early March 2019, the Drug Enforcement Agency ("DEA") observed Almanzar Hernandez entering and exiting the stash house carrying bags and other items consistent with narcotics distribution. (*Id.* ¶¶ 19(a)–(e).)

Almanzar Hernandez was sentenced to a 75-month term of imprisonment, below the Sentencing Guidelines range of 87 to 108 months, on June 23, 2021. (J. at 1, ECF No. 88; *see also* Sent'g Tr. 8:22–9:2, ECF No. 91; PSR ¶ 5(c).) He is currently incarcerated at Federal Correctional Institution ("FCI") Elkton, and his projected release date is August 12, 2024. (Gov't Opp'n at 3; Def.'s Reply at 1.) Almanzar Hernandez submitted the instant motion on May 28, 2022. (Def.'s Mot. at 3.) In his motion, Almanzar Hernandez essentially argues that he is at heightened health risk from COVID-19, and that "reducing [his] sentence to time served would achieve 3553(a)'s directive to impose a sentence that is 'sufficient, but not greater than necessary.'" (*Id.* at 2.) The Government filed its opposition to Almanzar Hernandez's motion on July 16, 2022. (Gov't Opp'n at 1.) Almanzar Hernandez submitted his reply on October 24, 2022. (Def.'s Reply at 15.)

## LEGAL STANDARD

Section 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391 (Dec. 21, 2018), authorizes a court to reduce a defendant's term of imprisonment upon motion of the Director of the Bureau of Prisons ("BOP") or upon motion of the defendant. A court may reduce a defendant's sentence only "if it finds that . . . extraordinary and compelling reasons warrant

such a reduction[.]" 18 U.S.C. § 3582(c)(1)(A). Three requirements must be met before a court grants such relief.

First, absent waiver or forfeiture by the Government, a petitioner must "fully exhaust[] all administrative" remedies in requesting relief from the BOP. *Id.*; *see also United States v. Saladino*, 7 F.4th 120, 124 (2d Cir. 2021). Second, a petitioner must show that "extraordinary and compelling reasons warrant such a reduction," 18 U.S.C. § 3582(c)(1)(A)(i), "and would not simply constitute second-guessing of the sentence previously imposed." *United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021). The Second Circuit has held that, pursuant to the First Step Act's revision of the compassionate release statute, district courts have "broad" discretion in determining what facts constitute "extraordinary and compelling reasons" justifying release. *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). Accordingly, a court is not limited to those circumstances specified in the Sentencing Commission Guidelines and may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it]." *Id.* Third, a court must "consider[] the factors set forth in section 3553(a) to the extent that they are applicable[.]" 18 U.S.C. § 3582(c)(1)(A). These factors include, of particular relevance here, "the nature and circumstances of the offense" and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a).

## DISCUSSION

### I. Administrative Exhaustion

As an initial matter, the Government disputes Almanzar Hernandez's contention that he has satisfied the statute's administrative exhaustion requirement. Almanzar Hernandez states that he filed the instant motion "more than 30 days after the director at North Lake Correctional

3

Facility received [his] request for RIS [reduction in sentence]."[1]  (Def.'s Mot. at 2.)  The Government, however, contends that the "BOP and North Lake . . . have no record of receiving a compassionate release request from Almanzar Hernandez" and that "the only request listed for Almanzar Hernandez on BOP's administrative remedy program was for a review of an incident report he received last summer."  (Gov't Opp'n at 5.)  In his reply, Almanzar Hernandez maintains that he "did submit his initial requests to the staff/warden at FCI North Lake . . . [but] was informed by the staff that all request [sic] needed to go to the court(s) directly once the warden denied (or after 30-days had elapsed) such a request because the BOP was downsizing and closing FCI North Lake[.]"  (Def.'s Reply at 2.)  He further states that the staff at North Lake Correctional Facility told "all inmates that [requests for compassionate release] are denied immediately . . . based on reduction of staff personal [sic] and proper staff members to handle such request [sic] for relief, leaving the only remedy which was to file [the] motion directly with the court after the 30-day limit to file[.]"  (*Id.* at 2–3.)

Almanzar Hernandez does not provide any evidence of his request for release from the BOP, and there is no other evidence that the BOP had the opportunity to evaluate his request before he filed his motion with this Court.  The Court need not resolve this dispute over administrative exhaustion, however, because even assuming Almanzar Hernandez has satisfied the exhaustion requirement, he has not established an extraordinary or compelling reason to warrant release.

II.     **Almanzar Hernandez Has Not Demonstrated an "Extraordinary and Compelling" Reason for Release**

Almanzar Hernandez states that his continued incarceration "would place [him at] an

---

[1]     At the time Almanzar Hernandez submitted his motion, he was incarcerated at North Lake Correctional Facility.  He has since been transferred to Federal Correctional Institution ("FCI") Elkton.

unacceptable risk of death or serious illness." (Def.'s Mot. at 1–2.) He describes various medical conditions (i.e. "bad cavities and/or unaddressed/unknown tooth or root canal matters," and "lower leg pain into the foot") that he argues place him at increased risk from COVID-19. (Def.'s Reply at 8–9.) Almanzar Hernandez also references "issues with his health that [are] not reported in his documentations [sic]." (*Id.* at 10.)

The record does not establish that Almanzar Hernandez's health concerns rise to the level of an "extraordinary and compelling" reason for early release. As for his dental issues, Almanzar Hernandez's medical records show a number of encounters with dental staff in April and May 2022. (Gov't Opp'n, Ex. A.) Notes following a dental procedure state that "minor discomfort [was] reported by the patient," and that the "[p]atient was informed about the probability of having some sensitivity" following the procedure. (*Id.*) Regarding Almanzar Hernandez's lower leg or foot pain, his records show that he was seen by a medical provider, also in May 2022, who gave him medication for his pain and also suggested a "shoe insert." (*Id.*) Accordingly, there is no indication the BOP has failed to address Almanzar Hernandez's medical concerns. Moreover, neither of the conditions Almanzar Hernandez describes is "a specific life-ending or debilitating illness with a predictable, dire short-term prognosis" that would warrant immediate release. *United States v. Ebbers*, 432 F. Supp. 3d 421, 429 (S.D.N.Y. 2020) (Caproni, J.) In addition, to the extent Almanzar Hernandez has other health conditions that are not reflected in the record, the Court has no basis to evaluate whether such conditions would justify release.

Almanzar Hernandez's concern regarding COVID-19, while certainly serious, does not warrant compassionate release. First, Almanzar Hernandez has been fully vaccinated against COVID-19 and received a booster dose in April 2022. (Gov't Opp'n, Ex. A.) *See also* COVID-

19 Vaccine Immunization Schedule for Persons 18 Years of Age, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/vaccines/covid-19/downloads/COVID-19-immunization-schedule-ages-6months-older.pdf (last visited Jan. 12, 2023) (stating that the primary series for the Janssen COVID-19 vaccine consists of a single dose).  Courts in this district have generally found that fully vaccinated defendants have "significant protection against serious illness or death should [they] contract COVID-19" and have denied early release in such cases—particularly where a defendant, as here, does not have underlying health conditions that place him at heightened risk.  *See, e.g.*, *United States v. Sosa*, No. 14-CR-468, 2022 WL 1690833, at *3-4 (S.D.N.Y. May 26, 2022) (Torres, J.); *United States v. Diaz*, No. 19-CR-65, 2021 WL 2018217, at *1 (S.D.N.Y. May 20, 2021) (Furman, J.).  Second, FCI Elkton has modified its operations to reduce the risk of COVID-19 infection, including sanitation, testing, and quarantining protocols.  *See* COVID-19 Modified Operations Plan & Matrix, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited Jan. 12, 2023).  Third, the Court considered the impact of the COVID-19 pandemic on the conditions of Almanzar Hernandez's incarceration at sentencing, imposing a below-Guidelines sentence in part to "take into account the fact that [Almanzar Hernandez had] been living under lockdown, [in] very crowded circumstances" as a result of the pandemic.  (Sent'g Tr. 8:18-19.)  Accordingly, Almanzar Hernandez has not established an "extraordinary and compelling" basis for early release.

### III. The Section 3553(a) Factors Weigh Against Release

The Section 3553(a) sentencing factors do not support early release.  As the Court stated at sentencing, "[i]t would be difficult to overstate the seriousness of [Almanzar Hernandez's] offense," and "the most important goal of [his] sentencing is general deterrence."  (Sent'g Tr. 7:19-20, 8:12-13.)  Almanzar Hernandez's conduct—maintaining a stash house to facilitate

6

supplying narcotics to others, and distributing large quantities of narcotics—"endanger[ed] those who lived not only in the apartment but in the neighborhood." (*Id.* 7:20–25.)

The Court also stated that, in light of Almanzar Hernandez's history and characteristics, "if [it] were sentencing him under the advisory guidelines, [it] would give him the lowest number of months within his range." (*Id.* 8:6–8.) As noted above, the Court did not, however, impose a Guidelines sentence on Almanzar Hernandez. Instead, the Court imposed a below-Guidelines sentence of 75 months, in part due to the conditions of his incarceration. (*Id.* 9:1–2.) While the Court commends Almanzar Hernandez for his efforts to maintain good conduct while incarcerated, the Court finds that a further reduction of his sentence is not warranted at this time. Releasing Almanzar Hernandez now would not reflect "the seriousness of the offense," or serve as an effective means of "deterring others from committing crimes." *See* 18 U.S.C. § 3553(a); Sent'g Tr. 8:13–14.

Because Almanzar Hernandez has not established an "extraordinary and compelling" reason, and because the § 3553 factors weigh against release, his motion pursuant to 18 U.S.C. § 3582(c)(1)(A) is DENIED.

## CONCLUSION

For the reasons stated above, Almanzar Hernandez's motion pursuant to 18 U.S.C. § 3582(c)(1)(A) is DENIED.

The Clerk is respectfully directed to close the motion at ECF No. 107.

SO ORDERED.

Dated: New York, New York
January 24, 2023

　　　　　　　　　　　　　　　　　　　　　　　/s/ Kimba M. Wood
　　　　　　　　　　　　　　　　　　　　　　　KIMBA M. WOOD
　　　　　　　　　　　　　　　　　　　　　United States District Judge

7